**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **ROY AUTRY**, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | **EP-19-CV-00154-DCG** |
| **AHERN RENTALS, INC.,** *d/b/a Ahern* | § | |
| *Rentals and Sales*, | § | |
| | § | |
| | § | |
| *Defendant.* | § | |

<u>**ORDER REGARDING ATTORNEY'S FEES AND COSTS**</u>

For the following reasons, the Court **AWARDS** Plaintiff Roy Autry **$251,649.54** in

**attorney's fees** and **$3,643.36** in **costs**.

## I.    BACKGROUND

This is an employment law case that Plaintiff filed against his former employer,

Defendant Ahern Rentals, Inc.[1]  Attorneys from the Chavez Law Firm served as Plaintiff's

counsel throughout the litigation.[2]  An attorney from a different firm (Kirk Cooper of Cooper

Appeals, P.L.L.C.) provided Plaintiff additional representation on certain post-judgment

matters.[3]

### A.    Procedural Background

Notably, Plaintiff achieved only limited success in this litigation; although the Court

permitted Plaintiff to try his hostile work environment claim to a jury, the Court granted

---

[1] *See, e.g.*, Am. Compl., ECF No. 5.

[2] *See, e.g.*, *id.* at 8; Pl.'s Appl., ECF No. 162, at 3.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF
system, rather than the cited document's internal pagination.

[3] *See, e.g.*, Pl.'s Suppl. Appl., ECF No. 198, at 1–2, 11.

summary judgment in Defendant's favor on Plaintiff's discrimination and retaliation claims.[4]

The jury ultimately found Defendant liable on Plaintiff's sole surviving claim and awarded

$100,000 in compensatory damages and $400,000 in punitive damages.[5]  Plaintiff now seeks

$1,281,460.00 in attorney's fees[6] and $3,643.36 in costs.[7]

**B.    Judge Berton's Report and Recommendation**

The Court referred Plaintiff's fee application to U.S. Magistrate Judge Anne T. Berton for

a Report and Recommendation ("R. & R.").[8]  Judge Berton recommends that the Court:

(1)    award Plaintiff $161,524.00 in attorney's fees—much less than the $1,281,460.00 he requests; but

(2)    award Plaintiff the full amount of costs he seeks ($3,643.36).[9]

Plaintiff timely objected to some (but not all) of Judge Berton's conclusions.[10]  Defendant didn't

object to any part of the R. & R., and its deadline to object has expired.[11]

---

[4] *See generally Autry v. Ahern Rentals, Inc.*, No. 3:19-CV-00154, 2021 WL 4464180 (W.D. Tex. Sept. 28, 2021).

[5] *See* Liab. Verdict, ECF No. 149, at 1–2; Damages Verdict, ECF No. 153, at 1–2.

The Court denied Defendant's post-trial motion to either amend that judgment or render a judgment in Defendant's favor as a matter of law.  *See generally Autry v. Ahern Rentals, Inc.*, No. 3:19-CV-00154, 2025 WL 1511106 (W.D. Tex. May 20, 2025).

[6] *See* Pl.'s Appl. at 3, 26 (seeking $1,240,595.00 for the Chavez Law Firm); Pl.'s Suppl. Appl. at 11 (seeking an additional $40,865.00 for Mr. Cooper).

[7] *See* Pl.'s Appl. at 25.

[8] *See* Order Referring Pl.'s Appl., ECF No. 190; Order Referring Pl.'s Suppl. Appl., ECF No. 200.

[9] *See* R. & R., ECF No. 201, at 22.

[10] *See generally* Obj., ECF No. 202.

[11] *See* 28 U.S.C. § 636(b)(1) (setting a 14-day deadline to object to an R. & R.).

## II.    DISCUSSION

### A.    Standard of Review

Where—as here—a party only objects to parts of a Magistrate Judge's report and recommendation, "[t]he court reviews the objected-to portions . . . de novo" and reviews the "unobjected-to portions . . . for clear error or abuse of discretion."[12]

### B.    Attorney's Fees

#### 1.    Plaintiff is Entitled to Attorney's Fees as a Prevailing Party

The Court first accepts Judge Berton's conclusion that Plaintiff is a "prevailing party" entitled to attorney's fees under applicable law.[13]  No one objected to that conclusion,[14] and it is neither clearly erroneous nor an abuse of discretion.

#### 2.    Applicable Legal Framework for Determining the Proper Amount of Attorney's Fees

Having determined that Plaintiff is entitled to *some* amount of attorney's fees, the Court must next decide *how much*.  Courts in the Fifth Circuit apply a "two-step method" when determining the proper amount of attorney's fees.[15]  First, the Court calculates the "lodestar," "which is equal to the number[] of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work."[16]  Second, the Court "consider[s] whether to

---

[12] *E.g.*, *Fulgham v. Comm'r of Soc. Sec.*, No. 6:21-cv-00017, 2021 WL 8441759, at *1 (E.D. Tex. Nov. 16, 2021).

[13] *See* R. & R. at 4–5.

[14] *See* Obj. at 1.

[15] *E.g.*, *Portillo v. Cunningham*, 872 F.3d 728, 741 (5th Cir. 2017).

[16] *E.g.*, *id.* (citation modified).

decrease or enhance the lodestar based" on a list of considerations called "the *Johnson* factors,"[17] which the Court will discuss below.[18]

Because an appropriate fee award "cannot be [calculated] with formulaic precision,"[19] the "district court has broad discretion in determining the amount of a fee award."[20]  Ultimately, however, the Court's goal is to "approximate what a client would be expected to pay in a comparable case" for the attorney's services.[21]

### 3.    Step #1 – Calculating the Lodestar

Step #1 of the analysis—calculating the lodestar—is itself divided into two distinct subtasks:[22]

(a)    determining "the *number of hours* reasonably expended" in the case; and then

(b)    multiplying that number "by the *prevailing hourly rate* in the community for similar work."[23]

---

[17] *E.g.*, *id.*

[18] *See infra* Section II.B.4.a.

[19] *E.g.*, *Leroy v. City of Houston*, 906 F.2d 1068, 1083 (5th Cir. 1990) (citation modified).

[20] *E.g.*, *Hopwood v. Texas*, 236 F.3d 256, 277 (5th Cir. 2000) (citation modified).

[21] *Fessler v. Porcelana Corona de Mex., S.A. de C.V.*, 23 F.4th 408, 419 (5th Cir. 2022).

[22] *See, e.g.*, *Coates v. TNT Crane & Rigging, Inc.*, No. 7:22-cv-00018, 2023 WL 11915725, at *1 (W.D. Tex. May 25, 2023) ("The lodestar calculation can be divided into two steps.").

To avoid confusion, the Court will use the word "Step" to refer only to the two steps of the lodestar analysis (*i.e.*, calculating the lodestar at Step #1 and then determining whether to adjust the lodestar at Step #2)—not to the two subtasks the Court must perform to calculate the lodestar at Step #1. *See, e.g.*, *CEATS, Inc. v. TicketNetwork, Inc.*, 71 F.4th 314, 326–27 (5th Cir. 2023) ("*Under the first step*, a court must calculate the 'lodestar' . . . . *Under the second step*, a court must consider whether the lodestar amount should be adjusted up or down . . . ." (emphases added)).

[23] *E.g.*, *Fessler*, 23 F.4th at 415 (emphases added).

### a.    Number of Hours

The Court thus begins by determining the number of hours that Plaintiff's attorneys reasonably expended in this case.

### i.    Applicable Legal Standard

The fee applicant bears "the burden of showing the reasonableness of the hours billed"— that is, the burden to show that he or she "exercised billing judgment."[24]  The Court must exclude any "[h]ours which, though actually expended, nevertheless are excessive, redundant, or otherwise unnecessary, or which result from the case being overstaffed."[25]

The fee applicant also bears the burden to "document[] the appropriate hours expended."[26]  The Court must "exclude all time that is . . . inadequately documented."[27]  Thus, the Court may "reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review."[28]

When confronted with a vague or incomplete application for attorney's fees—or an application that seeks compensation for excessive, duplicative, or unnecessary work—the Court has two options.[29]  The Court may either:

---

[24] *E.g.*, *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006).

[25] *E.g.*, *Leroy*, 906 F.2d at 1079 (citation modified) (emphasis omitted).

[26] *E.g.*, *Fessler*, 23 F.4th at 415–16 (citation modified).

[27] *Combs v. City of Huntington*, 829 F.3d 388, 392 (5th Cir. 2016) (citation modified).

[28] *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir. 1995).

[29] *See, e.g.*, *Burns v. Nielsen*, No. 3:17-CV-00264, 2021 WL 534711, at *8 (W.D. Tex. Feb. 12, 2021); *Ares v. Schneider Elec. USA, Inc.*, No. 3:19-CV-00283, 2023 WL 3335041, at *5 (W.D. Tex. May 9, 2023).

    (1)     "perform a *line-by-line analysis*" of the attorney's time records and delete or reduce specific problematic billing entries; or

    (2)     "reduce the hours awarded by a *percentage* intended to substitute for the exercise of billing judgment."[30]

However, because "the essential goal in shifting fees is to do rough justice" rather than "to achieve auditing perfection," "trial courts need not, and indeed should not, become green-eyeshade accountants" when considering fee applications.[31]  For that reason, Judges in this Division typically prefer across-the-board percentage reductions to scrutinizing billing records line by line.[32]

    Finally, "plaintiffs do not have the right to bill . . . for time on issues on which they d[id] not prevail."[33]  Thus, where—as here[34]—a plaintiff asserts multiple claims, but prevails on only

---

[30] *Burns*, 2021 WL 534711, at *8 (emphases added) (citation modified); *see also, e.g.*, *Ares*, 2023 WL 3335041, at *5 (similar).

[31] *E.g.*, *Burns*, 2021 WL 534711, at *8 (citation modified).

[32] *See Ares*, 2023 WL 3335041, at *5 ("This is a District Court, not an accounting firm, so the court will not be going line-by-line through Plaintiff's voluminous billing records to try and correct their mistakes; therefore, it will instead apply a flat percentage decrease in hours.").

    *See also, e.g.*, *Preciado v. Recon Sec. Corp.*, No. 3:23-CV-00052, 2025 WL 2345098, at *6-7 (W.D. Tex. Aug. 13, 2025) (reducing attorneys' hours by a flat percentage rather than performing a comprehensive line-by-line analysis of the attorneys' billing entries).

    *But see, e.g.*, *Hernandez v. Ho'olaulima Gov't Sols.*, No. 3:23-CV-00439, 2024 WL 5274527, at *3–4 (W.D. Tex. Apr. 19, 2024) (performing line-by-line analysis where attorneys sought compensation for only 24.85 hours of work, thereby making an exhaustive review much less time-intensive).

[33] *E.g.*, *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996).

[34] *See supra* notes 4–5 and accompanying text.

one of them, the plaintiff's attorney can't recover for time expended on the unsuccessful claims.[35]

When the successful and unsuccessful claims are distinct and segregable, the court's task is relatively straightforward: the court simply treats the unsuccessful claims "as if they had been raised in separate lawsuits" and "exclude[s] [them] from the fee award" accordingly.[36]  The inquiry becomes more complicated, however, if the successful and unsuccessful claims "share a common core of facts or related legal theories," such that it would be impossible to precisely demarcate which hours were spent on which claims.[37]  "When a plaintiff's claims cannot be disentangled," the Court must instead focus on the overall "results obtained."[38]

Notably, not all Judges in this Division account for the "results obtained" at the same step of the analysis.  Some Judges, when faced with a case in which the plaintiff's winning and losing claims are inextricably intertwined, account for the plaintiff's limited success at Step #2 of the analysis by adjusting the lodestar downward based on the *Johnson* factors.[39]  So, to illustrate, a Judge might:

---

[35] *E.g.*, *Fessler*, 23 F.4th at 416 ("It is axiomatic that work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved[,] and therefore no fee may be awarded for services on an unsuccessful claim." (citation modified)).

[36] *See, e.g.*, *id.* (citation modified).

[37] *See, e.g.*, *id.* (citation modified).

[38] *E.g.*, *id.* (citation modified).

[39] *See, e.g.*, *Ares*, 2023 WL 3335041, at *7.

*See also infra* Section II.B.4.a (explaining that the results that the plaintiff obtained is one of the *Johnson* factors that a court should consider at Step #2).

(1)      reduce an attorney's hours by 30% at Step #1 to account for the attorney's failure to adequately document his time;[40] and then

(2)      reduce the lodestar by an additional 20% at Step #2 to account for the plaintiff's limited success.[41]

Other Judges, by contrast, account for the plaintiff's limited success at Step #1 of the analysis by cutting a percentage of the attorney's hours.[42]  So, for example, a Judge might:

(1)      reduce the attorney's hours by 44% at Step #1 to account for both the attorney's failure to adequately document his time *as well as* the plaintiff's limited success; and then

(2)      impose no further reduction at Step #2.

Critically, those two approaches don't necessarily lead to different results.  In both of the hypothetical examples above, the attorney would receive the exact same amount of attorney's fees.[43]  That demonstrates that so long as the Court performs the math correctly, and so long as the Court doesn't double-dip by imposing a limited-success reduction at *both* Step #1 *and* Step

---

[40] *Cf. Ares*, 2023 WL 3335041, at *5 ("Given the block-billing, excessiveness, vagueness, failure to sufficiently remove time spent on [other matters], and overall failure to exercise billing judgment, the court will be reducing all hours by 30% [at Step #1].").

[41] *Cf. id.* at *7 ("Here, the court will reduce the lodestar by 20% [at Step #2] due to [the plaintiff's] limited success.").

[42] *See, e.g.*, *Preciado*, 2025 WL 2345098, at *8 (concluding that the plaintiff's "attorneys' hours [w]ould be reduced to account for his unsuccessful claims").

[43] Suppose the attorney bills 100 hours at $300/hour.

In the first example, reducing 100 hours by 30% yields 70 hours.  Multiplying 70 hours by $300/hour equals $21,000.  Reducing $21,000 by an additional 20% yields $16,800.

In the second example, reducing 100 hours by 44% yields 56 hours.  Multiplying 56 hours by $300/hour equals $16,800.  The attorney receives the same amount in both examples.

#2,[44] it doesn't really matter which approach the Court adopts—the ultimate results will be the same.  In at least one prior case, the undersigned Judge has elected to consider "limited success" at Step #1,[45] so the Court will do the same here for the sake of consistency.

The difference *does* matter, however, when one is comparing fee reductions across cases. To make an apples-to-apples comparison, the Court must determine whether the Judges in both cases accounted for the plaintiff's limited success at the same step.  If one Judge made the limited-success reduction at Step #1 while the other made the limited-success reduction at Step #2, the Court must calculate the *total effective reduction* in each case.  That will become important—and much less abstract—below.[46]

---

[44] *See, e.g.*, *Walker*, 99 F.3d at 771 ("[T]he district court must be careful not to double count a *Johnson* factor already considered in calculating the lodestar." (citation modified)); *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) ("The lodestar may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar.").

[45] *Compare Burns*, 2021 WL 534711, at *9 (Guaderrama, J.) ("Where the prevailing party is successful on some but not all claims, *reduction of hours* expended on the unsuccessful claims is warranted . . . ." (emphasis added)), *and id.* ("*[T]he hours expended* on the [plaintiff's unsuccessful] retaliation claim must be deducted [here]." (emphasis added)), *with id.* at *16 (not imposing any further reduction at Step #2).

[46] *See infra* Section II.B.3.a.ii.III.

### ii.    The Chavez Law Firm's Attorneys' Hours

The Chavez Law Firm's attorneys seek compensation for the following hours:[47]

| Attorney | Hours Requested |
|---|---|
| Enrique Chavez, Jr. | 546.85 hours |
| Michael Anderson | 485.25 hours |
| Christine Chavez-Osterberg | 143 hours |
| **Total** | **1,175.1 hours** |

### I.    Judge Berton's Recommended Reduction

For several reasons, Judge Berton recommends reducing the Chavez Law Firm's hours by **65%** across the board.[48]  First, as noted above, Plaintiff only prevailed on his hostile work environment claim; the Court dismissed Plaintiff's discrimination and retaliation claims at the summary judgment phase.[49]  Judge Berton thus recommends trimming the firm's hours to account for Plaintiff's limited success.[50]  Crucially, Judge Berton recommends applying that limited-success reduction at Step #1 (*i.e.*, by cutting the firm's hours for the purposes of calculating the lodestar) instead of Step #2 (*i.e.*, by adjusting the lodestar downward based on the *Johnson* factors).[51]

Second, Mr. Chavez describes his firm's timekeeping system as "document[-]based and oriented"—which, he explains, means that the firm's billing entries don't always correspond

---

[47] *See* Pl.'s Appl. at 3.

[48] *See* R. & R. at 17.

[49] *See supra* notes 4–5 and accompanying text.

[50] *See* R. & R. at 12–13 (citation modified).

[51] *Compare id.* at 5, 13, 17 (Step #1), *with id.* at 19–21 (Step #2).

with the date that the firm's attorneys actually performed the work.[52]  In Judge Berton's view, that billing practice "results in excessive billing for related tasks that are unreasonably divided into separate entries," which warrants further reducing the firm's hours.[53]

Third, the Chavez Law Firm employs a "communal email system," whereby every email that the firm receives "is reviewed by all members of the [firm]."[54]  According to Judge Berton, that system "results in duplicative work performed by Mr. Chavez, Mr. Anderson, and Ms. Chavez-Osterberg," which justifies a further reduction.[55]

Finally, Judge Berton concludes that "the timesheets for Mr. Chavez, Mr. Anderson and Ms. Chavez-Osterberg are peppered with numerous billing entries for clerical tasks that are not compensable" as attorney's fees.[56]

## II.    Plaintiff's Objections to the R. & R.

In his Objection to the R. & R., Plaintiff makes no attempt to argue that the billing and timekeeping practices that Judge Berton criticized are in fact unproblematic.[57]  Thus, rather than arguing that the Court shouldn't reduce the firm's hours *at all*, Plaintiff instead argues that the Court shouldn't reduce the firm's hours *by so much*.[58]  Claiming that a "65% across-the-board

---

[52] *See* Pl.'s Appl. at 10.

[53] *See* R. & R. at 13; *see also id.* at 13–15 (providing specific examples).

[54] *See* Pl.'s Appl. Ex. A, ECF No. 162-1, at 15.

[55] *See* R. & R. at 15; *see also id.* at 15–16 (providing specific examples).

[56] *See id.* at 16; *see also id.* at 17 (providing specific examples).

[57] *See* Obj. at 3, 9–10.

[58] *See id.*

reduction to the base lodestar hours for all Chavez Law Firm attorneys" would be "excessive," Plaintiff instead requests that any such reduction "be limited to a maximum of **30%**."[59]

### III.    The Court's Ruling

If the Court were reviewing the R. & R. under the deferential clear error/abuse of discretion standard, it would likely accept Judge Berton's recommended 65% reduction as a reasonable exercise of the judiciary's wide discretion in attorney's fee matters.[60]  Because Plaintiff objected to the 65% reduction, however, the Court must consider the issue *de novo*, without affording Judge Berton's reasoning or conclusions any deference.[61]

Having considered the issue on a blank slate, the Court will impose a smaller Step #1 reduction than Judge Berton recommends—namely, **44%**.  The Court arrives at that number based on notions of judicial consistency: If the same attorney follows the same problematic billing practices in two different cases before two different judges, then (all else being equal) the judges presiding over those two cases should reduce that attorney's hours by the same percentage.[62]  And in several other cases where the Chavez Law Firm followed the same timekeeping practices and enjoyed similarly limited success, Judges of this Division have reduced the Chavez Law Firm's hours by much less than 65%.

---

[59] *Id.* at 3 (emphasis added).

[60] *See supra* note 20 and accompanying text.

[61] *See, e.g.*, *Henderson v. Or. Dep't of Hum. Servs.*, No. 6:19-cv-00724, 2021 WL 217878, at *1 (D. Or. Jan. 21, 2021) ("For any issue on which a party files a timely objection, the district judge's review is *de novo*—that is, the judge makes [his or] her own decision without giving any deference to the magistrate judge's reasoning."); *see also supra* Section II.A.

[62] *Cf. Jones v. Mabry*, 723 F.2d 590, 596 (8th Cir. 1983) (opining in a different context that "decid[ing] like cases alike" is "[a] fundamental duty of courts of justice").

Take, for instance, *Avialae S de RL de CV v. Cummins Inc.*[63]  There, the Honorable Frank Montalvo reduced the Chavez Law Firm's hours based on many of the same problematic billing and timekeeping practices that Judge Berton criticized in her R. & R., including:

(1)    the firm's use of a "document based and oriented" timekeeping system (rather than a system that tracks work based on the date the attorney performed it);[64]

(2)    the excessive amount of time the firm claimed for ministerial tasks that should have only taken minutes to complete;[65] and

(3)    instances of the firm's attorneys double- or triple-billing for the same tasks.[66]

Based on those billing-related concerns, Judge Montalvo reduced the Chavez Law Firm's hours by 40% when calculating the lodestar at Step #1.[67]  Then, when considering the *Johnson* factors at Step #2, Judge Montalvo reduced the lodestar by an additional 20% to account for the

---

[63] No. 3:19-CV-00380, 2023 WL 5163901 (W.D. Tex. Aug. 3, 2023).

[64] *See id.* at *5; *see also supra* notes 52–53 and accompanying text.

[65] *Compare Avialae*, 2023 WL 5163901, at *4, *with* R. & R. at 13 ("For example . . . Mr. Chavez billed three-tenths of an hour—about eighteen minutes, or $210—for reading three text entries that should have taken less than a minute to [r]ead and [r]eview, if not much less." (citation modified) (emphasis omitted)).

[66] *See Avialae*, 2023 WL 5163901, at *5; *see also supra* notes 54–55 and accompanying text.

[67] Although the *Avialae* court stated that it was reducing the Chavez Law Firm's hours by only **30%** at Step #1, *see* 2023 WL 5163901, at *5, that appears to be a typo or miscalculation.  Mr. Chavez claimed 287.85 hours in his fee application in *Avialae*, while Mr. Anderson claimed 195.15 hours.  *Id.* at *3.  Reducing those numbers by 30% would have resulted in 201.495 hours for Mr. Chavez and 136.605 hours for Mr. Anderson.  Yet the *Avialae* court awarded Mr. Chavez only 172.7 hours and Mr. Anderson only 117.1 hours—which is equal to a **40%** reduction.  *See id.* at *5.

plaintiff's limited success in the case.[68]  Taken together, those two reductions amounted to a total effective reduction of **52%**.[69]

*Ares v. Schneider Electric USA, Inc.*—another employment law case in which the Chavez Law Firm represented the plaintiff—is similar.[70]  There too, Judge Montalvo was troubled by many of the same billing and timekeeping problems that Judge Berton identified in her R. & R., including:

(1)    the firm's use of a "communal email system" that results in duplicative billing;[71] and

(2)    the firm's "document based and oriented" timekeeping system.[72]

Thus, when calculating the lodestar at Step #1, Judge Montalvo reduced the attorneys' hours by 30% based on those problematic billing and timekeeping practices.[73]  Judge Montalvo then

---

[68] *See id.* at *7–8 ("Plaintiff initially asserted six causes of action allegedly arising from upwards of a million dollars in damages.  Four of those claims were dismissed.  For the other two, the jury awarded a paltry $28,000 in compensatory damages.  This is far from a successful result.  Accordingly, the eighth *Johnson* factor weighs heavily in favor of a reduction in the lodestar. . . . [B]ecause the most critical factor, *i.e.*, the 'results obtained' factor, so heavily weighs in favor of a reduction, the court will decrease the lodestar by 20% . . . .").

[69] 60% (*i.e.*, 100% minus a 40% reduction at Step #1) times 80% (*i.e.*, 100% minus a 20% reduction at Step #2) = 48% (*i.e.*, 100% minus a 52% reduction).

[70] *See* 2023 WL 3335041, at *1–3.

[71] *See id.* at *4; *see also supra* notes 54–55 and accompanying text.

[72] *See Ares*, 2023 WL 3335041, at *4; *see also supra* notes 52–53.

[73] *See Ares*, 2023 WL 3335041, at *5 ("Given the block-billing, excessiveness, vagueness, failure to sufficiently remove time spent on [a dismissed party and certain matters that occurred in state court], and overall failure to exercise billing judgment, the court will be reducing all hours by 30%.").

reduced the lodestar by 20% at Step #2 based on the plaintiff's "limited success."[74]  Judge Montalvo thereby imposed a total effective reduction of **44%**.[75]

Finally, consider *Preciado v. Recon Security Corp.*—yet another employment law case in which the Chavez Law Firm represented the plaintiff.[76]  The presiding Judge (U.S. Magistrate Judge Robert F. Castañeda)[77] likewise trimmed the firm's hours for many of the same reasons set forth in Judge Berton's R. & R.:

(1)    the plaintiff only prevailed on one of his claims;[78]

(2)    the firm's attorneys double- or triple-billed for the same tasks;[79] and

(3)    some of the claimed time was for clerical (rather than legal) work.[80]

---

[74] *Id.* at *7 ("Plaintiff's counsel did not succeed on the majority of their claims and won just a fraction of the damages Plaintiff was seeking at trial. . . . As such, Plaintiff's counsel achieved 'limited success' and the lodestar will be decreased . . . by 20%.").

The Court notes that *Ares* also appears to contain either a typo or a miscalculation.  After applying the 30% reduction at Step #1, the *Ares* court arrived at a lodestar of $200,996.95.  *Id.* at *6.  Reducing that value by an additional 20% would yield a fee award of $160,797.56.  However, the court instead awarded the firm $160,767.56 in fees.  *See id.* at *8.  Because the opinion doesn't explicitly state that the court intended to reduce the firm's fees by an additional $30, this Court presumes that the *Ares* court instead intended to reduce the lodestar by exactly 20%.

[75] 70% (*i.e.*, 100% minus a 30% reduction) times 80% (*i.e.*, 100% minus a 20% reduction) = 56% (*i.e.*, 100% minus a 44% reduction).

[76] *See* 2025 WL 2345098, at *1, *5.

[77] The parties in *Preciado* "consented to proceed before a U.S. Magistrate Judge for all purposes, including trial."  Order Referring Case to Magistrate Judge at 1, *Preciado v. Recon Sec. Corp.*, No. 3:23-CV-00052 (W.D. Tex. May 1, 2023), ECF No. 17.

[78] *See Preciado*, 2025 WL 2345098, at *6; *see also supra* notes 49–51 and accompanying text.

[79] *See Preciado*, 2025 WL 2345098, at *6; *see also supra* notes 54–55 and accompanying text.

[80] *See Preciado*, 2025 WL 2345098, at *6; *see also supra* note 56 and accompanying text.

Unlike Judge Montalvo, however, Judge Castañeda accounted for the plaintiff's limited success at Step #1 rather than Step #2.[81]  Thus, when calculating the lodestar at Step #1, Judge Castañeda reduced the Chavez Law Firm's hours by 50% to account not just for the firm's billing and timekeeping practices, but also for the plaintiff's limited success.[82]  Having already accounted for the plaintiff's limited success at Step #1, Judge Castañeda imposed no further reduction when applying the *Johnson* factors at Step #2.[83]  Thus, the total effective reduction that Judge Castañeda imposed in *Preciado* was **50%**.

The Court perceives no factual distinction between the instant case and the cases cited above that would justify a significantly larger reduction here.  Indeed, if anything, this case warrants a *smaller* reduction than the 50% reduction in *Preciado*.  One reason why Judge Castañeda reduced the Chavez Law Firm's hours in *Preciado* was because the firm had attempted to bill its opponent for hours that resulted from the firm's own failure to comply with the court's scheduling order.[84]  Here, by contrast, Defendant hasn't called the Court's attention to any comparable attempt by the Chavez Law Firm to charge Defendant for time spent remedying the firm's own failure to follow orders, rules, or deadlines.[85]

---

[81] *Compare Preciado*, 2025 WL 2345098, at *5–6 (Step #1 of Judge Castañeda's analysis), *with id.* at *8 (Step #2).

[82] *See id.* at *6–7.

[83] *See id.* at *8.

[84] *See id.* at *6.

[85] *See* Def.'s Resp., ECF No. 168, at 1–12.

The Court has also reviewed the four out-of-District cases that Judge Berton cited to support her recommendation to reduce the Chavez Law Firm's hours by 65%.[86]  Respectfully, the Court agrees with Plaintiff that those cases don't support such a large reduction.[87]  Three of those cases imposed a much smaller reduction of **50%**.[88]  And while the court in the fourth case reduced the hours expended on an ancillary issue by 65%,[89] the court only reduced the attorneys' hours spent on the substantive portion of the case by **40%**.[90]  Thus, all four of those cases imposed a smaller overall reduction than Judge Berton recommends.

The Court therefore agrees with Plaintiff that reducing the firm's hours by 65% would be excessive here.[91]  But Plaintiff's counterproposal—"that any across-the-board percentage reduction to base lodestar hours for Chavez Law Firm attorneys be limited to a maximum of 30%"[92]—goes too far in the opposite direction.

---

[86] *See* R. & R. at 17–18 (first citing *Gilmore v. Audubon Nature Inst., Inc.*, 353 F. Supp. 3d 499, 514 (E.D. La. 2018); then citing *Yelton v. PHI Inc.*, No. 09-3144, 2012 WL 3441826, at *8 (E.D. La. Aug. 14, 2012); then citing *Peak Tech. Servs., Inc.*, No. 10-1568, 2012 WL 3234203, at *8 (S.D. Tex. Aug. 6, 2012); and then citing *Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979, 988 n.22 (S.D. Tex. 1997)).

[87] *See* Obj. at 9–10 n.6.

[88] *See Yelton*, 2012 WL 3441826, at *8; *Peak Tech. Servs.*, 2012 WL 3234203, at *8; *Neles-Jamesbury*, 974 F. Supp. at 988 n.22.

[89] *See Gilmore*, 353 F. Supp. 3d at 513–14 ("The second aspect of plaintiff's counsel's request for attorney's fees—hours spent preparing and litigating the motion for an attorney's fees award – is grossly excessive and exhibits a substantial failure on the part of plaintiff's counsel to exercise billing judgment. . . . I find that a 65% reduction is appropriate, to remedy plaintiff's counsel's failure to exercise billing judgment in this second component of the case.").

[90] *See id.* at 511–13 ("The first component of time incurred consists of the hours expended from the outset of the litigation through the order granting the parties' joint motion to dismiss the matter with prejudice . . . . These are the hours spent on the substantive portion of the case . . . . I find that a 40% reduction in plaintiff's fees sought for the substantive portion of the case is appropriate.").

[91] *See* Obj. at 3.

[92] *See id.*

Plaintiff insists that doing so would be consistent with *Ares*[93]—which, as discussed, reduced the Chavez Law Firm's hours by 30% when calculating the lodestar at Step #1.[94]  That argument overlooks, however, that the *Ares* court didn't just reduce the firm's hours by 30% at Step #1—it further reduced the firm's recovery by an additional 20% at Step #2 to account for the plaintiff's limited success.[95]

As stated above, though, Judge Berton has recommended[96]—and the undersigned Judge has decided[97]—to account for Plaintiff's limited success when calculating the lodestar at Step #1, rather than when deciding to adjust the lodestar at Step #2.  Thus, if this Court were to reduce the Chavez Law Firm's hours by only 30% at Step #1, and then make no additional limited-success reduction at Step #2, then the Court would be imposing a much smaller reduction than Judge Montalvo imposed in *Ares*, since it wouldn't be accounting for Plaintiff's limited success at *either* step of the analysis.

But Plaintiff doesn't want the Court to make an additional 20% reduction at Step #2 to make his requested 30% reduction at Step #1 equivalent to the total reduction in *Ares*.[98]  To the

---

[93] *See id.* at 10 ("[Plaintiff] respectfully asks that the reduction to the Chavez Law Firm's base hours for lodestar purposes be no more than 30%, in keeping with similar percentage reductions made to base hours in . . . *Ares*.").

[94] *See supra* note 73 and accompanying text.

Plaintiff similarly argues that reducing the firm's hours by 30% would be consistent with the result in *Avialae*.  *See* Obj. at 10.  As discussed above, however, the portion of *Avialae* stating that the court was only reducing the firm's hours by 30% appears to be a miscalculation or a typo; the court actually reduced the firm's hours by 40%.  *See supra* note 67.  *Avialae* thus provides no support for a 30% reduction at Step #1.

[95] *See supra* notes 73–74 and accompanying text.

[96] *See supra* note 51 and accompanying text.

[97] *See supra* note 45 and accompanying text.

[98] *See* Obj. at 8 n.5, 9.

contrary, Plaintiff wants the Court to adjust the lodestar *upward* at Step #2, not downward.[99]

Thus, Plaintiff's suggestion that reducing the Chavez Law Firm's hours by no more than 30% would be "in keeping with . . . *Ares*" is mistaken.[100]

Still, the Court agrees with the underlying premise of Plaintiff's argument: There's no reason to impose a larger fee reduction here than Judge Montalvo imposed in *Ares*.[101]  Thus, at Step #1, the Court will reduce the Chavez Law Firm's hours by **44%**—which, as explained above, is mathematically equivalent to the total effective reduction that Judge Montalvo imposed in *Ares* (a 30% reduction at Step #1 plus a 20% reduction at Step #2).[102]

Finally, the Court has considered whether its 44% reduction of the Chavez Law Firm's hours is consistent with the undersigned Judge's prior ruling in *Burns v. Nielsen*.[103]  In that case, the undersigned Judge opined that a reasonable number of hours for an "employment discrimination case[] involving one to two claims" is generally between "88 to 595 attorney hours (with a median at 253 hours)."[104]  Here, the Chavez Law Firm seeks compensation for 1,175.1 hours in total.[105]  Reducing that number by 44% yields 658.06 hours.  Adding Mr.

---

[99] *See id.* at 8 n.5 (arguing that "[a]n upward adjustment is warranted"); *see also infra* Section II.B.4.b.

[100] *Contra* Obj. at 10.

[101] *Cf. id.* at 9–10; *see also supra* notes 84–85 and accompanying text.

[102] *See supra* note 75 and accompanying text.

[103] *See generally Burns*, 2021 WL 534711 (Guaderrama, J.).

*See also* Def.'s Resp. at 8–9 (arguing that, "[i]n line with the Court's decision in *Burns*, the Court should reduce [the Chavez Law Firm's hours] by at least 90%"); Obj. at 9–10 n.6 (making the contrary argument that "[t]he raw hours requested by the Chavez Law Firm fall within [the] range" discussed in *Burns* and below).

[104] *See Burns*, 2021 WL 534711, at *7.

[105] *See supra* note 47 and accompanying text.

Cooper's time to that figure yields a total of 730.36 hours[106]—a number outside of *Burns*'s outer range.  However, given the length of the trial in this case (eight days),[107] 730.36 hours is not so far outside the 88–595 hour range that it causes the Court to second-guess the 44% figure it has selected.

Accordingly, the Court reduces each of the firm's attorneys' hours by **44%**:

| Attorney | Hours Requested | Hours Awarded |
|---|---|---|
| Enrique Chavez, Jr. | 546.85 hours | **306.24 hours** |
| Michael Anderson | 485.25 hours | **271.74 hours** |
| Christine Chavez-Osterberg | 143 hours | **80.08 hours** |
| **Total** | 1,175.1 hours | **658.06 hours** |

Finally, the Court emphasizes that it doesn't fault Judge Berton for recommending a reduction larger than the one the Court ultimately imposed.  The Court merely came to a different conclusion after considering the issue *de novo*.

### iii.    The Chavez Law Firm's Legal Assistant's Hours

Judge Berton also recommends eliminating all of the hours that the Chavez Law Firm's legal assistant spent working on the case.[108]  Judge Berton concludes that all of the "work billed by Mr. Chavez's legal assistant" was on "clerical tasks," which are "not compensable" under

---

[106] *See infra* Section II.B.3.a.iv (declining to reduce the 72.3 hours for which Mr. Cooper seeks compensation).

[107] *Compare* 7/25/22 Minute Entry, ECF No. 126 (indicating that trial began on July 25, 2022), *with* Damages Verdict at 3 (rendered on August 3, 2022).

[108] *See* R. & R. at 9–10.

applicable law.[109]  Neither party objected to that conclusion,[110] so the Court will review it for clear error or abuse of discretion.[111]  Finding neither, the Court accepts Judge Berton's recommendation to deny Plaintiff's request for legal assistant fees.

### iv.    Mr. Cooper's Hours

Finally, Mr. Cooper—who is not a member of the Chavez Law Firm, and did not employ the same problematic billing practices—seeks compensation for **72.3 hours**.[112]  Judge Berton doesn't recommend reducing that amount,[113] and neither party objected to that recommendation.[114]  That recommendation is neither clearly erroneous nor contrary to law,[115] so the Court accepts it.

---

[109] *See id.*

[110] *See* Obj. at 2 (noting Judge Berton's conclusion on that point, but without objecting to it); *see also id.* at 3, 9–10, 11 (not raising any argument that Judge Berton erred by discounting the work that the firm's legal assistant performed).

[111] *See supra* Section II.A.

[112] *See* Pl.'s Suppl. Appl. at 2–3.

[113] *See* R. & R. at 18.

[114] *See* Obj. at 2.

[115] *See supra* Section II.A.

### v.    Total Hours Awarded

Plaintiff's attorneys are therefore entitled to compensation for the following hours:

| Attorney | **Hours Awarded** |
|---|---|
| Enrique Chavez, Jr. | **306.24 hours** |
| Michael Anderson | **271.74 hours** |
| Christine Chavez-Osterberg | **80.08 hours** |
| Kirk Cooper | **72.3 hours** |
| **Total** | **730.36 hours** |

### b.    Reasonable Hourly Rate

To finish calculating the lodestar—and thereby complete Step #1 of the analysis—the Court must next determine a reasonable hourly rate for each of Plaintiff's attorneys.[116]

### i.    Applicable Legal Standard

"To determine the appropriate hourly rate, the court looks to the market rate in the community for similar work."[117]  "Hourly rates are to be computed according to the prevailing market rates in the relevant legal market"—"not the rates that lions at the bar may command."[118] "[T]he relevant market for purposes of determining the prevailing rate . . . is the community in which the district court sits"[119]—which, in this case, is the El Paso Division of the Western

---

[116] *See, e.g.*, *Diocesan Migrant & Refugee Servs., Inc. v. U.S. Immigr. & Customs Enf't*, No. 3:19-CV-00236, 2021 WL 289548, at *11–13 (W.D. Tex. Jan. 28, 2021).

[117] *E.g.*, *Hernandez*, 2024 WL 5274527, at *2 (citation modified).

[118] *E.g.*, *Hopwood*, 236 F.3d at 281 (citation modified).

[119] *E.g.*, *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (citation modified).

District of Texas, rather than the Western District of Texas as a whole.[120]  Ultimately, "[t]he

reasonableness of an attorney's hourly rate depends on the experience and qualifications of the

professional."[121]

The fee applicant bears the burden "to produce satisfactory evidence . . . that the

requested rates are in line with those prevailing in the relevant community for similar services by

lawyers of reasonably comparable skill, experience and reputation."[122]  "Evidence typically

proffered to help a district court determine reasonable fees include affidavits from local

attorneys, state bar surveys,[123] and attorneys' fees in similar cases."[124]

---

[120] *See, e.g.*, *Ares*, 2023 WL 3335041, at *2 ("[T]he relevant market is the division a district court sits in.  Thus, the relevant market is not the entire Western District but just the community of El Paso."); *Rocha v. Balfour Beatty Mil. Hous. Mgmt.*, No. 3:16-CV-358, 2017 WL 10774806, at *4 (W.D. Tex. Apr. 10, 2017) (Briones, J.) (similarly looking to prevailing rates in the El Paso area, as opposed to the District as a whole); *Burns*, 2021 WL 534711, at *4 (Guaderrama, J.) (same).

Mr. Cooper disputes that the Court should look to prevailing rates in the El Paso Division (rather than the District as a whole) when calculating a reasonable rate.  *See* Cooper Aff., ECF No. 198-1, at 13–14.  The Court adheres to its prior ruling in *Burns*—as well as the rulings of several of the undersigned Judge's colleagues—that the relevant market is the El Paso area, not the entire Western District of Texas. *See* the cases cited *supra*.

[121] *E.g.*, *Burns*, 2021 WL 534711, at *4 (citation modified).

[122] *E.g.*, *id.* (citation modified).

[123] At least one Judge in this Division has noted a "disagreement among" this Division's Judges "about whether to rely on survey data to determine a reasonable rate."  *See Denton v. City of El Paso*, No. 3:20-CV-00085, 2022 WL 2712859, at *4 (W.D. Tex. July 13, 2022) (comparing cases), *report and recommendation accepted by* Order Adopting Report and Recommendation of the Magistrate Judge, *Denton v. City of El Paso*, No. 3:20-CV-00085 (W.D. Tex. Oct. 14, 2022), ECF No. 53 [hereinafter *Order Accepting Denton R. & R.*].  The Court needn't wade into that debate, as the Court hasn't deemed it necessary to consult bar survey data to determine reasonable rates for Plaintiff's counsel.

[124] *Chong v. Sunrise Rests., LLC*, No. 3:22-CV-00365, 2023 WL 3467786, at *2 (W.D. Tex. May 15, 2023).

### ii.    Plaintiff's Requested Rates

Plaintiff's attorneys seek compensation at the following rates:[125]

| Attorney | Rate Requested |
|---|---|
| Enrique Chavez, Jr. | $700/hour |
| Michael Anderson | $330/hour |
| Christine Chavez-Osterberg | $270/hour |
| Kirk Cooper | $550/hour |

### iii.    Judge Berton's Recommended Reductions

Judge Berton recommends reducing those rates as follows:[126]

| Attorney | Judge Berton's Recommended Rate |
|---|---|
| Enrique Chavez, Jr. | $411/hour |
| Michael Anderson | $283/hour |
| Christine Chavez-Osterberg | $251/hour |
| Kirk Cooper | $307/hour |

To arrive at those numbers, Judge Berton relied primarily on Judge Kathleen Cardone's 2024 order in *Hernandez v. Ho'olaulima Government Solutions, LLC*[127]—yet another employment discrimination case in which the Chavez Law Firm represented the plaintiff.[128]  Mr.

---

[125] Pl.'s Appl. at 3; Pl.'s Suppl. Appl. at 4.

[126] *See* R. & R. at 7–9, 18–19.

[127] *See id.* at 7 (quoting *Hernandez*, 2024 WL 5274527, at *3).

[128] *See Hernandez*, 2024 WL 5274527, at *1–2.

Chavez sought to be compensated at $770/hour in *Hernandez*[129]—an even higher rate than he demands here.[130]  Mr. Anderson, meanwhile, sought to be compensated at the same rate he seeks in this case ($330/hour).[131]  (As far as the docket reveals, neither Ms. Chavez-Osterberg nor Mr. Cooper served as counsel in *Hernandez*.)

Judge Cardone declined to compensate Mr. Chavez and Mr. Anderson at such high rates.[132]  After surveying other recent fee awards, Judge Cardone observed that "[o]ther courts in the El Paso division have found rates of $300 to $400 appropriate for attorneys with significant experience" like Mr. Chavez.[133]  While Judge Cardone acknowledged that "courts have occasionally found rates greater than $400 appropriate," she deemed those cases "outliers" that were "not necessarily reflective of the market rate" in El Paso.[134]  So, after considering "the attorneys' experience, median hourly rates for similarly experienced attorneys throughout the Western District of Texas, attorneys' fees awards granted in the El Paso division in recent years, and the effects of inflation," Judge Cardone compensated Mr. Chavez at $400/hour and Mr. Anderson at $275/hour.[135]

Judge Berton used the rates that Judge Cardone awarded in *Hernandez* as her starting point for determining the appropriate rates here.[136]  Judge Berton then adjusted those rates for

---

[129] *Id.* at *2.

[130] *See supra* note 125 and accompanying text.

[131] *Hernandez*, 2024 WL 5274527, at *2.

[132] *See id.* at *3.

[133] *Id.*

[134] *Id.*

[135] *Id.*

[136] *See* R. & R. at 7–8.

inflation that had occurred since Judge Cardone decided *Hernandez* in 2024.[137]  Those adjustments yielded a rate of $411/hour for Mr. Chavez and $283/hour for Mr. Anderson.[138]

Because neither Ms. Chavez-Osterberg nor Mr. Cooper appeared as counsel in *Hernandez*, Judge Berton couldn't use *Hernandez* as a baseline for calculating their rates.  But based on their "experience, fee awards in similar cases in this Division, and [her] knowledge of prevailing market rates in the El Paso area," Judge Berton deemed $251/hour a reasonable rate for Ms. Chavez-Osterberg and $307/hour a reasonable rate for Mr. Cooper.[139]

### iv.    Plaintiff's Objections

Plaintiff objects to Judge Berton's recommended rates.[140]  According to Plaintiff, the Court should "grant the original hourly rates set out in his fee applications"—or, barring that, "hourly rates higher than those recommended by" Judge Berton.[141]

### v.    The Court's Rulings

Just as the Court had to determine a reasonable number of hours for the Chavez Law Firm *de novo*, so too must the Court determine a reasonable hourly rate for Plaintiff's attorneys without affording Judge Berton's recommendations any deference.[142]

The Court concludes, however, that Judge Berton's overall approach is the correct one.  Again, this Court strives to treat like cases alike.  If the same attorney obtains an attorney's fee

---

[137] *See id.* at 7–8 & nn.2–3 (explaining how Judge Berton calculated the inflation-adjusted rates).

[138] *See id.*

[139] *See id.* at 8–9.

[140] *See* Obj. at 2–9.

[141] *Id.* at 2.

[142] *See supra* Section II.A; *see also supra* note 61 and accompanying text.

award in two similar cases before two different judges, then (all else being equal) the awarded rate in Case #1 shouldn't differ radically from the rate in Case #2.  While it's of course appropriate to award a *slightly* higher rate in the later case to account for intervening inflation and the attorney's accumulation of experience over time, a court shouldn't award a *drastically* higher rate absent some categorical difference between the two cases that justifies a substantially larger award.

Awarding Mr. Chavez $700/hour would violate that principle.  In other recent cases where Mr. Chavez successfully recovered attorney's fees, the Court compensated him at much lower rates:

| Case Name | Presiding Judge | Decision Date | Rate Awarded to Mr. Chavez |
|---|---|---|---|
| *Preciado v. Recon Sec. Corp.*[143] | Judge Robert F. Castañeda | August 13, 2025 | **$415/hour** |
| *Hernandez v. Ho'olaulima Gov't Sols.*[144] | Judge Kathleen Cardone | April 19, 2024 | **$400/hour** |
| *Avialae S de RL de CV v. Cummins Inc.*[145] | Judge Frank Montalvo | August 3, 2023 | **$350/hour** |
| *Ares v. Schneider Elec. USA, Inc.*[146] | Judge Frank Montalvo | May 9, 2023 | **$300/hour** |

The Court perceives no relevant distinction between those cases and this one that would justify a nearly twofold increase in Mr. Chavez's rate.

---

[143] 2025 WL 2345098, at *7.

[144] 2024 WL 5274527, at *3.

[145] 2023 WL 5163901, at *6.

[146] 2023 WL 3335041, at *3.

Compensating Mr. Chavez at $700/hour would also be out of step with the rates that

Judges in this Division have awarded to other experienced attorneys in the past few years:

| Case Name | Presiding Judge | Decision Date | Rate Awarded |
|---|---|---|---|
| *Apac v. MEH Props. Inc.*[147] | Judge Kathleen Cardone | November 1, 2024 | **$300/hour** |
| *Chong v. Sunrise Rests., LLC*[148] | Judge Frank Montalvo | May 15, 2023 | **$300/hour** |
| *Bowar v. City of El Paso*[149] | Judge Robert F. Castañeda[150] | January 31, 2023 | **$300/hour** |
| *Denton v. City of El Paso*[151] | Judge Robert F. Castañeda[152] | July 13, 2022 | **$325/hour** |
| *Burns v. Nielsen*[153] | Judge David C. Guaderrama | February 12, 2021 | **$250/hour** |
| *Diocesan Migrant & Refugee Servs., Inc. v. U.S. Immigr. & Customs Enf't*[154] | Judge Frank Montalvo | January 28, 2021 | **$375/hour** |

---

[147] No. 3:24-CV-00127, 2024 WL 4647640, at *10 (W.D. Tex. Nov. 1, 2024).

[148] 2023 WL 3467786, at *2.

[149] No. 3:21-CV-00257, 2023 WL 1325500, at *3 (W.D. Tex. Jan. 31, 2023).

[150] Judge Cardone ultimately accepted Judge Castañeda's recommendation to award $300/hour. No. 3:21-CV-00257, 2023 WL 2127142 (W.D. Tex. Feb. 16, 2023).

[151] 2022 WL 2712859, at *5.

[152] Judge Cardone ultimately accepted Judge Castañeda's recommendation to award $325/hour. *See Order Accepting Denton R. & R.*

[153] 2021 WL 534711, at *6.

[154] 2021 WL 289548, at *13.

As Judge Cardone opined in the most recent of those cases, "$300 [is] a reasonable hourly rate for a veteran attorney in a discrimination case" like this one.[155]  Awarding Mr. Chavez more than twice that amount would therefore be an aberration.

To his credit, Plaintiff acknowledges those contrary authorities in his Objection.[156]  He argues, however, that the above-cited cases don't adequately account for inflation that has occurred over the past few decades.[157]

Plaintiff bases that argument on Judge Montalvo's 2009 decision in *Jackson v. Host International, Inc.*,[158] which Plaintiff characterizes as enshrining $300 per hour "as an anchor amount for assessing the market rate for attorney's fee awards in employment discrimination/retaliation cases for experienced attorneys in El Paso."[159]  Plaintiff claims that

---

[155] *See Apac*, 2024 WL 4647640, at *10.

[156] *See* Obj. at 3–5 & nn.1–3.

[157] *See id.* at 5.

[158] *See also Jackson v. Host Int'l, Inc.*, No. 3:08-CV-00112, 2009 WL 10669466, at *2 (W.D. Tex. Dec. 21, 2009) (compensating counsel at $300/hour), *aff'd*, 426 F. App'x 215 (5th Cir. 2011).

[159] *See* Obj. at 3.

*See also id.* at 4 (asserting that "[m]any of the [El Paso] Division's hourly rate decisions since 2009 point to *Jackson* as authority or else rely on other decisions that reference *Jackson* in order to set a roughly $300 an hour benchmark rate in employment cases").

Judges in this Division haven't adjusted that $300/hour figure for inflation since 2009,[160] which has artificially depressed fee awards for veteran attorneys in El Paso.[161]

According to Plaintiff, $300 in 2009 dollars is equal to roughly $450 today.[162]  Plaintiff thus asserts that any rate lower than $450/hour—including the $411/hour rate that Judge Berton recommends awarding Mr. Chavez here[163]—is too low.[164]

Plaintiff's argument rests on an incorrect premise.  Notwithstanding Plaintiff's assertion to the contrary,[165] the Judges presiding over nearly all of the above-cited cases involving the Chavez Law Firm *did* explicitly account for inflation when calculating the firm's reasonable

---

[160] *See id.* at 5 ("[N]one of the Division's subsequent fee cases post-*Jackson* . . . have explicitly accounted for inflation for more than 15 years when citing to *Jackson*, or when referencing other prior decisions relying on *Jackson* to set hourly rates around $300 an hour for attorneys in employment law cases.  This has resulted in the $300 an hour amount remaining static and being cited as the prevailing El Paso rate benchmark for more than 15 years . . . .").

[161] *See id.* at 6–7 (arguing that the $300/hour rate "is not keeping with the times, is based on an anchor number that has not been updated in more than 15 years, and results in a depressed market rate for El Paso area attorneys").

[162] *See id.* at 6.

[163] *See supra* note 126 and accompanying text.

[164] *See* Obj. at 6; *see also* Cooper Aff. at 14–17 (making similar arguments regarding Mr. Cooper's requested rate).

[165] *See supra* note 160 and accompanying text.

hourly rates.[166]  That's why the *Avialae* court awarded Mr. Chavez $350/hour in August 2023,

the *Hernandez* court awarded him $400/hour in April 2024, and the *Preciado* court awarded him

$415/hour in August 2025.[167]  Thus, it's simply wrong for Plaintiff to say that "no fee decision in

the El Paso Division has ever explicitly accounted for inflation since" Judge Montalvo decided

*Jackson* in 2009.[168]

Judge Berton likewise explicitly recommends adjusting counsel's rates to account for

intervening inflation in her R. & R.[169]  The Court therefore rejects Plaintiff's suggestion that the

R. & R. fails to adequately account for inflation.[170]

---

[166] *See Avialae*, 2023 WL 5163901, at *6 ("[T]he State Bar of Texas' '2015 Hourly Rate Fact Sheet' states the median hourly rate in 2015 for a practitioner in West Texas with over twenty-five years of experience was $275.  For those with ten years of experience, it was $200.  *Adjusted for inflation, those rates are equivalent to $349.59 and $254.25, respectively, as of April 2023*. . . . For those reasons, the court will apply an hourly rate of $350 for Mr. Chavez and $255 for Mr. Anderson." (emphasis added)).

*See also Hernandez*, 2024 WL 5274527, at *3 ("Taking into consideration the attorneys' experience, median hourly rates for similarly experienced attorneys throughout the Western District of Texas, attorneys' fees awards granted in the El Paso division in recent years, *and the effects of inflation*, the Court finds that a reasonable hourly rate for Chavez is $400 and for Anderson, $275." (emphasis added)).

*See also Preciado*, 2025 WL 2345098, at *6 ("[T]he Court looks to the *Hernandez* case, which concluded that, in 2024, a reasonable hourly rate for Mr. Chavez would be $400 . . . . In 2023, the district court in *Avialae* concluded that a reasonable hourly rate for Mr. Chavez would be $350.  *Taking into account the effects of inflation*, the Court concludes that a reasonable hourly rate for Mr. Chavez is $415." (citation modified)).

[167] *See* the cases cited *supra* note 166.

[168] *Compare* Obj. at 2–3, *with* the cases cited *supra* note 166.

*See also* Obj. at 5 (likewise asserting (erroneously) that "none of the Division's . . . fee cases post-*Jackson*, including the *Hernandez* case, have explicitly accounted for inflation . . . .").

[169] *See* R. & R. at 7 ("After considering Mr. Chavez's experience, fee awards in similar cases in this Division, and the Court's knowledge of prevailing market rates in the El Paso area, *and adjusting for inflation*, the Court recommends a reasonable hourly rate for Mr. Chavez to be $411." (first emphasis added; second emphasis omitted)); *id.* at 8 (doing the same for Mr. Anderson and Ms. Chavez-Osterberg); *id.* at 9 (doing the same for Mr. Cooper).

[170] *Contra* Obj. at 6–7.

Plaintiff also points to various cases in which a state or federal judge in El Paso awarded

an attorney more than $450/hour[171]—including cases in which either Mr. Chavez[172] or Mr.

Cooper[173] were counsel of record.  Based on those cases, Plaintiff urges this Court to award his

attorneys no less than $450/hour.[174]

Those cases essentially fall into three categories.  The first category includes cases where

the defendant didn't contest the rates that the plaintiff demanded—often because the defendant

hadn't appeared or participated in the litigation at all.[175]  As the undersigned Judge has

previously concluded, cases in which "the defendant d[id] not contest the rates" that the plaintiff

---

[171] *See* Pl.'s Appl. at 13; Pl.'s Suppl. Appl. at 7; Pl.'s Notice Suppl. Auth., ECF No. 199, at 1–2; Obj. at 7–8.

[172] *See* Pl.'s Appl. at 13 (discussing the *Valdez* case cited below).

[173] *See, e.g.*, Pl.'s Notice Suppl. Auth. at 1–2 (discussing the *Sepulveda* case cited below).

[174] *See, e.g.*, Obj. at 7–8.

[175] *See Spark Multinational, LLC v. Yong Xing Ltd.*, No. 3:22-CV-00030, 2023 WL 2569441, at *2 (W.D. Tex. Mar. 17, 2023) ("Defendant was served in April, but failed to appear.  In August, upon request by Plaintiff, the Clerk of Court entered default against Defendant.  Two months later, Plaintiff filed the instant Motion seeking default judgment."); *see also id.* at *6 (deeming hourly rates of $791.92 and $425.91 "fair and reasonable considering the work performed").

*See also* Plaintiff's Motion for Default Judgment at 1, 5, *Valdez v. GEO Int'l Mgmt., LLC*, No. 3:20-cv-00184 (W.D. Tex. Dec. 19, 2020), ECF No. 13 (seeking $9,720.00 in attorney's fees after the defendants defaulted); Affidavit of Enrique Chavez, Jr. at 5, 11, *Valdez v. GEO Int'l Mgmt., LLC*, No. 3:20-cv-00184 (W.D. Tex. Dec. 19, 2020), ECF No. 13-2 (specifically asking the court to compensate Mr. Chavez at $600/hour); Judgment at 1–2, *Valdez v. GEO Int'l Mgmt., LLC*, No. 3:20-cv-00184 (W.D. Tex. Jan. 5, 2021), ECF No. 14 (awarding the plaintiff the full amount of attorney's fees he requested—without performing an explicit lodestar analysis—after noting that the defendants had "failed to file an answer and appear within the time allowed by law").

*See also* Plaintiff's Motion for Attorney's Fees and Costs and for Entry of Final Judgment at 7–9, *Bally v. Dreams Cabaret, LLC*, No. 3:17-cv-00030 (W.D. Tex. Mar. 11, 2019), ECF No. 92 (seeking compensation at $450/hour); Order at 1–2, *Bally v. Dreams Cabaret, LLC*, No. 3:17-cv-00030 (W.D. Tex. Mar. 19, 2019), ECF No. 93  (granting that motion "as unopposed" because the defendants missed their deadline to respond (emphasis omitted)).

demanded are "unhelpful,"[176] as a lack of adversarial presentation will generally result in hourly rates higher than a client would ordinarily pay.[177]

The second category includes cases where the court awarded attorney's fees without explicitly conducting a lodestar analysis or surveying the prevailing rates in the El Paso market.[178]  Such cases are equally "unhelpful" because they lack any reasoning to support their conclusions.[179]

The third category contains just one case: *Vielma v. ACC Holdings*, which Plaintiff characterizes as compensating the prevailing attorneys at $500/hour.[180]  That case is especially

---

[176] *See Burns*, 2021 WL 534711, at *5.

[177] *See Ares*, 2023 WL 3335041, at *3 ("For many of the higher hourly rates awarded, there is a common denominator in that the defendants in those cases did not contest the hourly rates.  Such a factor is not present in this case.  Here, Defendant vehemently opposes Plaintiff's requested fees and offers evidence contesting the hourly rate.").

*See also Hernandez*, 2024 WL 5274527, at *3 (characterizing the $791.92/hour award in *Spark International* as an "outlier[]" that is "not necessarily reflective of the market rate" in El Paso).

*See also Baulch v. Johns*, 70 F.3d 813, 818 n.8 (5th Cir. 1995) (acknowledging that because the opposing party did not subject the rate requested in *Baulch* "to adversarial testing," that rate might not "be reasonable in other cases in" the relevant market)

[178] *See Sepulveda* Fee Appl., ECF No. 199-2, at 19–20 (seeking to compensate Mr. Cooper at $700/hour); *Sepulveda* Final J., ECF No. 199-1, at 1–5 (awarding fees without performing an explicit lodestar analysis or examining prevailing rates in El Paso).

*See also* Mobbs *Borrego* Aff., ECF No. 198-1, at 63, 66 (seeking to compensate plaintiff's appellate counsel at $700/hour); *Borrego* J., ECF No. 198-1, at 67–70 (awarding plaintiff the amount of attorney's fees he requested without explicitly performing a lodestar analysis or surveying prevailing rates in the El Paso market).

*See also Richardson v. White Consol. Indus.*, No. 2003-4378, 2005 WL 4889909 (Tex. Dist. Ct. Aug. 19, 2005) (similarly failing to conduct an explicit lodestar analysis or survey prevailing market rates).

[179] *Cf. Burns*, 2021 WL 534711, at *5 (deeming prior fee award "unhelpful" where "[c]ounsel did not submit any court document that shed[] light on [the awarding] court's reasoning behind approving [the awarded] rates").

[180] *See* Pl.'s Suppl. Appl. at 7.

unilluminating because the Court has no way to confirm that the court in fact awarded

$500/hour.  Plaintiff didn't give the Court a copy of the *Vielma* court's fee award or the

prevailing attorney's fee application.[181]  The Court thus has no way to know whether the *Vielma*

court performed a lodestar analysis or surveyed the prevailing rates in the El Paso market—and,

thus, no way to evaluate the persuasiveness of the *Vielma* court's reasoning.[182]

The only document that Plaintiff filed to corroborate his claim that the *Vielma* court

compensated the prevailing attorneys at $500/hour was the Texas Employment Lawyers

Association's Labor and Employment Law Yearbook from 2023, which speculates that "[t]he

hourly rate [that the *Vielma* court awarded] . . . *appears to have been* $500.00 per hour."[183]  Such

uncertain language gives the Court no confidence that the *Vielma* court in fact compensated the

winning attorneys at $500/hour—and, thus, no basis to conclude that a $500/hour rate would be

reasonable here.

Instead, the Court is most persuaded by cases where, after an adversarial presentation of

the issue, a Judge of this Division conducted a full-fledged lodestar analysis that explicitly

compared the rate the plaintiff demanded to the rates awarded in comparable cases.[184]  In each of

those cases, the Court compensated the prevailing attorney at a rate much lower than

---

[181] *See* Cooper Aff. at 18 (noting that the attorney's fee order in *Vielma* is "not available on Westlaw").

[182] *See supra* notes 178–179 and accompanying text.

[183] *See* TELA Yearbook, ECF No. 198-1, at 72, 271–73 (emphasis added).

[184] *See, e.g.*, *Ares*, 2023 WL 3335041, at *3 ("[A]fter consideration of both parties' affidavits and a thorough review of attorney fee awards in the El Paso division, the court determines $300 an hour to be reasonable for Enrique Chavez Jr. . . . .").

$450/hour.[185]  It is those cases—and not the unreasoned, summary dispositions on which

Plaintiff relies—that set the appropriate benchmark here.

Finally, Plaintiff emphasizes that whereas he submitted attorney affidavits to support the

reasonableness of his requested rates,[186] Defendant didn't submit its own competing affidavits

contesting those rates.[187]  According to Plaintiff, that means that the Court should accept

Plaintiff's requested rates as conclusive.[188]

The Court acknowledges Fifth Circuit caselaw stating that District Courts *may* accept a

litigant's suggested rate—even if the Court questions that rate's reasonableness—where the

opposing party doesn't contest the requested rate *at all* (whether by competing affidavits or

otherwise).[189]  Here, however, Defendant strenuously disputed the reasonableness of Plaintiff's

---

[185] *See supra* notes 143–154 and accompanying text.

[186] *See* Chavez Aff., ECF No. 162-1, at 7; Yanar Hanshew Aff., ECF No. 162-2, at 4; Duke Aff., ECF No. 162-3, at 3–4; Wenke Decl., ECF No. 163-1, at 4; Cooper Aff. at 11; Mendez *Autry* Aff., ECF No. 198-1, at 45.

[187] *See* Def.'s Resp. at 1–12.

[188] *See* Obj. at 9; Pl.'s Reply, ECF No. 170, at 3 (citing *Rocha*, 2017 WL 10774806, at *2).

[189] *See Tollett*, 285 F.3d at 368–69 ("In his affidavit, Tollett's counsel . . . asserts that the hourly rate stated in the billing records, $300, is reasonable. . . . *[I]n no way does the City contest the reasonableness of the requested rate*.  In addition, the City *did not challenge the requested rate in district court*.  In fact, on remand, in opposition to the sanctions motion, the City *essentially conceded* the reasonableness of the hourly rate . . . . We question that $300 is a reasonable hourly rate.  *But, only because the City has not contested it*, we hold that, based on Tollett's counsel's affidavit, the reasonable hourly rate is $300." (emphases added) (citation modified)).

*See also Rocha*, 2017 WL 10774806, at *2 (case cited by Plaintiff noting that when the attorney in *Tollett* "provided only his own affidavit claiming that his rates were reasonable, and the opposing party did not contest it, the court accepted the rate").

*See also Baulch*, 70 F.3d 813, 818 n.8 ("The affidavit asserts . . . that $225 to $300 is a reasonable hourly rate for attorneys of comparable experience.  *Appellant's response does not question . . . the rate claimed*.  Given this uncontested assertion, we approve of $13,831.31 as a reasonable fee in this case, *but, as the specifics were not subject to adversarial testing, we do not opine on whether the rate claimed would be reasonable in other cases in the Dallas area*." (emphases added)).

requested rates[190] and cited cases and other sources supporting substantially lower rates.[191]

Plaintiff hasn't directed the Court to any authority holding that a court must accept a rate that the

defendant attacks as unreasonable—and that *the Court itself* thinks is unreasonable—merely

because the defendant didn't attach an attorney affidavit to its response.[192]

Thus, to calculate the Chavez Law Firm's rates, the Court will do exactly as Judge Berton

recommended: the Court will start with a recent case awarding fees to the Chavez Law Firm, and

then adjust the rates awarded in that case to account for intervening inflation.[193]  But even though

the Court will follow the same *approach* as Judge Berton, it will award the Chavez Law Firm

slightly different *amounts*.  That's not because Judge Berton did anything wrong; it's because

Judge Berton didn't yet have the benefit of Judge Castañeda's decision in *Preciado* when she

issued her R. & R.[194]  As far as the Court is aware, *Preciado* is the most recent federal court

opinion awarding the Chavez Law Firm attorney's fees, so *Preciado* is the most up-to-date

benchmark for determining reasonable rates for the firm's attorneys.  Additionally, unlike

*Hernandez* (which Judge Berton used as her starting point when calculating the firm's inflation-

adjusted rates),[195] *Preciado* has the added benefit of providing a baseline rate for Ms. Chavez-

---

[190] *See, e.g.*, Def.'s Resp. at 9 ("The rates requested are plainly excessive."); *id.* at 10 ("[N]one of the declarations submitted in support of [Plaintiff's] fee application identify any case in which an hourly rate of $700 was found to be reasonable—in El Paso or elsewhere.").

[191] *See id.* at 10 ("[A]s this Court found in *Burns*, a reasonable hourly rates [sic] for attorneys of Mr. Chavez's experience range is $250, and a reasonable rate for an attorney of Anderson's experience is $185.  Such rates are consistent with the State Bar of Texas's 2015 *Hourly Rate Fact Sheet*.").

[192] *See* Obj. at 8–9; *see also* Pl.'s Reply at 3–4.

[193] *See* R. & R. at 7–8 & nn.2–3.

[194] *Compare id.* at 22, *with Preciado*, 2025 WL 2345098.

[195] *See* R. & R. at 7–8.

Osterberg, as opposed to Mr. Chavez and Mr. Anderson alone.[196]  The Court will therefore

calculate the Chavez Law Firm's reasonable rates by (1) taking the rates that Judge Castañeda

awarded in *Preciado* and (2) adjusting those rates for inflation that has occurred since Judge

Castañeda issued his opinion.

| Attorney | Rates Awarded in *Preciado*[197] | Inflation-Adjusted Rates[198] |
|---|---|---|
| Enrique Chavez, Jr. | $415/hour | **$422.99/hour** |
| Michael Anderson | $285/hour | **$290.49/hour** |
| Christine Chavez-Osterberg | $251/hour | **$255.83/hour** |

For essentially the same reasons, the Court also agrees with Judge Berton that it would be

excessive to compensate Mr. Cooper at $550/hour.  The Court can't use *Preciado* as a baseline

for calculating a reasonable rate for Mr. Cooper, however, since he wasn't counsel of record in

that case.[199]  And, for the reasons stated above, the state court case that Mr. Cooper cited as

evidence of his going rate isn't a helpful data point.[200]

---

[196] *See Preciado*, 2025 WL 2345098, at \*7–8 (awarding Ms. Chavez-Osterberg $251/hour).

[197] *See id.*

[198] Like Judge Berton recommended in her R. & R, *see* R. & R at 7–8 nn.2–3—and as Plaintiff specifically requested in his Objection, *see* Obj. at 6—the Court uses the United States Bureau of Labor Statistics' Consumer Price Index Inflation Calculator to determine what rates in today's dollars would have had the same buying power when Judge Castañeda decided *Preciado*.  *See* https://www.bls.gov/data/inflation_calculator.htm.  The Court used March 2026 data to calculate the inflation-adjusted rate because data for April 2026 were not yet available.

[199] *See Preciado*, 2025 WL 2345098, at \*5.

[200] *See supra* notes 178–179 (explaining that *Sepulveda* is unenlightening because the court did not conduct an explicit lodestar analysis or expressly survey prevailing rates in the El Paso market).

However, based on the cases discussed above—as well as the Court's own knowledge of prevailing rates in the El Paso market—the Court concludes that the rate that Judge Berton recommended awarding Mr. Cooper ($307/hour) would be reasonable.[201]  To account for the time that elapsed since Judge Berton issued her R. & R.,[202] however, the Court will similarly adjust that figure for inflation:

| Attorney | Rate Recommended by Judge Berton | Inflation-Adjusted Rate[203] |
|---|---|---|
| Kirk Cooper | $307/hour | **$313.81/hour** |

---

[201] *See* R. & R. at 9.

[202] The Court's extremely heavy immigration habeas caseload prevented the Court from adjudicating Plaintiff's Objections to Judge Berton's R. & R. more promptly.  Over 150 new immigration habeas petitions have been assigned to the undersigned Judge since June 2025. *See, e.g.*, *Huanaga-Luna v. Bondi*, No. 3:26-CV-00462, 2026 WL 822444, at *1 (W.D. Tex. Mar. 19, 2026) (Guaderrama, J.) (discussing the backlog).  The Court needed to prioritize those cases over this one. *See also, e.g.*, *Gonzales v. Wolfe*, No. 1:04-CV-208, 2006 WL 2792167, at *1 (S.D. Ohio July 5, 2006) (explaining that judges must "give[] first priority when possible to habeas corpus cases because they involve[] claims to a liberty interest, as opposed to most cases in [federal court], which are property or dignity interest claims").

[203] Here too, the Court used the United States Bureau of Labor Statistics' Consumer Price Index Inflation Calculator to determine what rates in today's dollars would have had the same buying power on the date Judge Berton issued her R. & R.

c.      **Final Lodestar Calculation**

Thus, the Court calculates the lodestar as follows:

| Attorney | Hours Awarded | Rate Awarded | Compensation Awarded |
|---|---|---|---|
| Enrique Chavez, Jr. | 306.24 hours | $422.99/hour | **$129,536.46** |
| Michael Anderson | 271.74 hours | $290.49/hour | **$78,937.75** |
| Christine Chavez-Osterberg | 80.08 hours | $255.83/hour | **$20,486.87** |
| Kirk Cooper | 72.3 hours | $313.81/hour | **$22,688.46** |
| **Total** | | | **$251,649.54** |

4.      **Step #2 – The *Johnson* Factors**

Having calculated the lodestar at Step #1, the Court now proceeds to Step #2: deciding whether to adjust the lodestar.

a.      **Applicable Legal Standard**

Although "[t]he lodestar amount is presumed reasonable, . . . the district court may depart upward or downward from this amount based on its consideration" of a list of factors called the "*Johnson* factors."[204]  Those factors are:

(1)      "the time and labor required to represent the client;"

(2)      "the novelty and difficulty of the issues in the case;"

(3)      "the skill required to perform the legal services properly;"

(4)      "the preclusion of other employment by the attorney;"

(5)      "the customary fee charged for those services in the relevant community;"

---

[204] *E.g.*, *Hobbs v. EVO Inc.*, 7 F.4th 241, 259 (5th Cir. 2021).

(6)    "whether the fee is fixed or contingent;"[205]

(7)    "the time limitations imposed by the client or circumstances;"

(8)    "the amount involved and the results obtained;"

(9)    "the experience, reputation, and ability of the attorney;"

(10)    "the undesirability of the case;"

(11)    "the nature and length of the professional relationship with the client;" and

(12)    "awards in similar cases."[206]

The *Johnson* factors are not equally weighted.[207] Factor #8 is "the most critical" consideration insofar as it relates to "the degree of success obtained."[208]

That said, "[t]he lodestar may not be adjusted [based on] a *Johnson* factor that was already taken into account during the initial calculation of the lodestar."[209] So, because the Court has already taken Plaintiff's "limited success" into account when reducing the Chavez Law Firm's hours at Step #1 of the analysis,[210] the Court can't further reduce the lodestar on that same basis at Step #2.

---

[205] Although the Fifth Circuit continues to list the sixth factor in its recitation of the *Johnson* test, *see, e.g.*, *Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 257 n.3 (5th Cir. 2018), "[t]he Supreme Court has barred any use of the sixth factor." *E.g.*, *Walker*, 99 F.3d at 772.

[206] *E.g.*, *Gurule*, 912 F.3d at 257 n.3.

[207] *See, e.g.*, *Jason D.W. v. Hou. Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998).

[208] *E.g.*, *id.* (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

[209] *Black*, 732 F.3d at 502.

*See also, e.g.*, *Jason D.W.*, 158 F.3d at 209 ("Many of [the *Johnson*] factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate, and should not be double-counted." (citations omitted)).

[210] *See supra* Section II.B.3.a.III.

"There is a strong presumption" that the lodestar represents a reasonable fee award.[211]

As such, "the lodestar may be increased only in extraordinary circumstances."[212] "The party

seeking modification of the lodestar under the *Johnson* factors bears the burden" to show that an

adjustment is appropriate.[213]

### b. Judge Berton's Recommendation and Plaintiff's Objection Thereto

In his initial fee application, Plaintiff asked the Court to double his fee award based on

several of the *Johnson* factors.[214] In her R. & R., however, Judge Berton concluded that none of

the *Johnson* factors warranted an upward (or downward) adjustment.[215]

In his Objection, Plaintiff challenges Judge Berton's application of only one of the

*Johnson* factors: Factor #10, "the undesirability of the case."[216] According to Plaintiff, "there are

few plaintiff-side employment lawyers in El Paso because the work is perceived to be

undesirable and of limited economic value to attorneys attempting to run private practices."[217]

---

[211] *E.g.*, *Black*, 732 F.3d at 502.

[212] *E.g.*, *Combs*, 829 F.3d at 393.

[213] *E.g.*, *Fessler*, 23 F.4th at 416.

[214] *See* Pl.'s Appl. at 9–18.

*See also* Pl.'s Suppl. Appl. at 9 ("If the Court grants [Mr. Cooper] the lodestar rate at the hours and amount requested, [Plaintiff] does not request an upward multiplier. If the Court grants Cooper an hourly rate at less than $550 an hour, the Court cuts Cooper's hours further, or both, or if the Court believes that in its discretion an upward adjustment of the lodestar figure is warranted[,] [Plaintiff] requests that this Court apply an upward multiplier of at least 1.5x based on the following *Johnson* factors . . . .").

[215] *See* R. & R. at 19–21.

[216] *See* Obj. at 8 n.5.

[217] *Id.*

Plaintiff thus contends that "[a]n upward adjustment is warranted" here "to compensate for the fact that El Paso is a community that is underserved in the employment law context."[218]

That's not the sort of "undesirability" that *Johnson* Factor #10 aims to address. The point of the "undesirability" factor is "to encourage and compensate civil rights attorneys *facing social and economic backlash* for their professional efforts to eradicate discrimination."[219] Absent any indication that employment lawyers in El Paso face the same sorts of "oppressive, unpleasant, or intimidating conditions" that civil rights attorneys faced in the segregated South of decades past,[220] the tenth *Johnson* factor doesn't warrant an enhancement here.[221]

Plaintiff didn't object to Judge Berton's conclusions regarding the other *Johnson* factors,[222] and Judge Berton's application of those factors is neither clearly erroneous nor an abuse of discretion.[223] The Court therefore accepts Judge Berton's recommendation to make no adjustment to the lodestar (upward or downward).

---

[218] *Id.*

[219] *See, e.g.*, *Menard v. Targa Res., LLC*, No. 19-00050, 2023 WL 5628593, at *8 (M.D. La. Aug. 31, 2023) (emphasis added).

[220] *Cf. Cooper v. Pentecost*, 77 F.3d 829, 833–34 (5th Cir. 1996) (concluding that district court "did not abuse its discretion in deciding not to enhance the attorneys' [fee] award;" "despite any general negative stigma associated with" the type of case at issue in *Cooper* (namely, prisoner cases), "the attorneys did not demonstrate that they were subjected to 'oppressive, unpleasant, or intimidating conditions' that would have supported an enhancement").

*See also, e.g.*, Obj. at 8 n.5 (failing to identify any such conditions); Pl.'s Appl. at 17–18 (same).

[221] *See Hernandez*, 2024 WL 5274527, at *6 (reaching the same conclusion in another one of the Chavez Law Firm's cases); *Preciado*, 2025 WL 2345098, at *8 (same).

[222] *See* Obj. at 1–11.

[223] *See* R. & R. at 19–21; *see also supra* Section II.A.

**C.    Costs**

The Court concludes with Plaintiff's request for costs.[224]  Judge Berton recommends awarding Plaintiff the full amount of costs he requests ($3,643.36).[225]  Neither party objected to that recommendation, so the Court will accept it unless it's clearly erroneous or an abuse of discretion.[226]  It is neither, so the Court will award Plaintiff the full amount of costs he seeks.

### III.    CONCLUSION

The Court therefore **ACCEPTS** Judge Berton's "Report and Recommendation" (ECF No. 201) **IN PART** and **MODIFIES** it **IN PART**.

The Court thereby **GRANTS** the following Motions **IN PART** and **DENIES** them **IN PART**:

(1)    "Plaintiff's Application for Attorney Fees and Costs" (ECF No. 162); and

(2)    "Plaintiff's Supplemental Application for Attorney's Fees (Post-Judgment Litigation)" (ECF No. 198).

The Court **AWARDS** Plaintiff **$251,649.54** in **attorney's fees** and **$3,643.36** in **costs**.

The Court will separately issue an Amended Final Judgment that incorporates Plaintiff's award of attorney's fees and costs.

**So ORDERED and SIGNED this 5th day of May 2026.**

**DAVID C. GUADERRAMA
SENIOR U.S. DISTRICT JUDGE**

---

[224] *See* Pl.'s Appl. at 25.

[225] *See* R. & R. at 22; *see also* Pl.'s Appl. at 25.

[226] *See supra* Section II.A.